# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

### CRIMINAL NO. 5:05CR207-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | **O R D E R** |
| | ) | |
| MAURICE E. BETHEA | ) | |

**THIS MATTER** is before the Court on the Government's Notice of Appeal and Motion for Revocation and Stay of Magistrate's Release Order entered orally on June 6, 2005. For the reasons stated herein, the Government's motion is granted and the Defendant is ordered detained pending trial.

## I. PROCEDURAL HISTORY

On May 24, 2005, the Defendant was charged in a 45-count bill of indictment stemming from an alleged multi-million dollar scheme to defraud real estate investors and mortgage brokers. He is also charged with conspiracy to possess with intent to distribute large quantities of cocaine and cocaine base as well as using a firearm during that conspiracy. Other counts charge him with wire and bank fraud and obstruction of justice. After a hearing on pretrial detention, the Magistrate Judge ordered the Defendant released on $100,000 unsecured bond with conditions of home detention and electronic monitoring. The Government has appealed.

## II. STANDARD OF REVIEW

"When the district court acts on a motion to revoke or amend a magistrate judge's pretrial [release] order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." ***United States v. Stewart*, 19 Fed. Appx. 46, 48 (4th Cir. 2001) (citing *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992)).**

## III. DISCUSSION

The undersigned has reviewed the charges and listened to the recording of the hearing and finds this matter may be disposed of without further hearing. ***United States v. Cisneros*, 328 F.3d 610, 614-15 (10th Cir. 2003) (Where review of an order of release entered by a Magistrate Judge is sought, that review must be done by the Court having original jurisdiction of the offense pursuant to § 3145 which "does not require that new information be available before a release . . . order can be reconsidered and revoked."); *accord, United States v. El Edwy*, 272 F.3d 149 (2d Cir. 2001); *United States v. Mostrom*, 11 F.3d 93, 95 (8th Cir. 1993); *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991); *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989).**

In Count Two of the indictment, the Defendant is charged with conspiracy to possess with intent to distribute in excess of 5 kilograms of cocaine and 50 grams of cocaine base. This charge subjects the Defendant to a mandatory minimum term of 10 years imprisonment and a maximum sentence of life imprisonment. **21 U.S.C. § 841(b)(1)(A).** As a result, and as defense counsel conceded at the hearing, "it shall be presumed that no condition or combination of

conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" **18 U.S.C. § 3142(e), (f).**

In support of the Government's motion for pretrial detention, the following factors were discussed during the hearing:

1. The Defendant has previous convictions for misdemeanor possession of marijuana in 1992 and carrying a concealed weapon in 2003. Another firearms charge was on his record but details of that charge were not disclosed. Other charges against the Defendant in the past have been dismissed.

2. The scheme with which the Defendant stands charged involved at least $1 million in cash withdrawals from his company, allegedly used to defraud investors and to maintain a lavish lifestyle. Witnesses who have spoken with the United States Attorney and/or investigating law enforcement have reported that the Defendant frequently bragged about his offshore accounts, specifically mentioning accounts in the Cayman Islands.

3. The Defendant testified in a deposition in connection with civil litigation stemming from this scheme that he had set up a bank account in Nevada in order to move money into offshore accounts.

4. The Defendant's girlfriend reported to law enforcement that on one occasion he had given her a check or cash for $43,000 and asked her to return it to him in the form of checks in sums no larger than $9,000.

5. The Defendant made wire transfers to his parents who have also been investigated by law enforcement.

6. When the Defendant learned he was being investigated, he and a co-defendant removed financial records from his office and allegedly destroyed them. When the Federal Bureau of Investigation (FBI) subpoenaed those records, the Defendant allegedly staged a break-in at his office. Thereafter, he never requested that his landlord change the locks at the office.

7. One witness told investigating agents that he had been instructed by the Defendant to "shut up" a female involved with the scheme should she speak with law enforcement.

8. A witness overheard the Defendant threaten to shoot one of his investors who was questioning the lack of return on profit.

9. The Defendant was known to carry a gun in an ankle holster and/or in his briefcase.

10. When the Defendant was arrested, he had a gun on his person. In the automobile with him at the time of his arrest was his eight-year-old daughter.

11. Before his arrest, the Defendant, who was driving his car, attempted elusive maneuvers from the FBI before turning down a dead-end road. His daughter was in the car during this time.

12. The Defendant took at least one trip to Texas to allegedly purchase cocaine. Witnesses claim to have seen large quantities of cocaine being prepared for distribution at the company's offices.

In order to rebut the presumption against release, defense counsel offered the following:

1. The Defendant conceded that at the time of his arrest he had a gun in his car. His girlfriend called him to say that someone was trying to break into her home and he came

      over to investigate in his car.  Upon arriving, he realized that the FBI was at his girlfriend's home and he left without coming in.

2. The Defendant has joint custody of his daughter and her mother travels extensively due to work.  He is unlikely to flee due to his close relationship with his daughter and parents.

3. Although he failed to appear for a charge of driving without an operator's license, that charge was later dismissed.

4. The Defendant's girlfriend has reported that he does not use drugs.

5. His prior record is minimal.

6. Pretrial Services has recommended pretrial release on electronic monitoring.

Defense counsel also reported at the end of the hearing that the Defendant does have a passport but lost it several months ago.

      The Magistrate Judge concluded that these factors rebutted the presumption against detention, noting that the Defendant's record was not as significant as those of most federal defendants, the offshore accounts do not translate into a flight risk, and the Defendant's daughter and parents constitute significant ties to the community.

      The undersigned respectfully disagrees with the Magistrate Judge's assessment.  "For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required."  ***Rueben***, 974 F.2d at 586.  While the Defendant here has produced some evidence to rebut the presumption in favor of detention, the mere production of evidence does not completely rebut the presumption.  ***Id.***  The Court finds that there are significant risks the Defendant will not appear at trial if he is released.  The reports of offshore accounts by more than one witness as

well as his own admission to the same show that if the Defendant were inclined to do so, he could leave the United States. The details of the charges with which the Defendant is accused show a sophistication in wire and bank fraud which, if true, could assist in fleeing the jurisdiction. The fact that the Defendant has joint custody of his minor child means that he could take her out of the country with impunity. And, it cannot be overlooked that the Defendant's passport is missing regardless of the cause thereof.

Nor does the Court find that the Defendant would not be a threat to the community. The significant presence of firearms in his life coincides with the claims of threats against purported witnesses. The presence of a gun in his car while he attempted, albeit briefly, to elude the FBI is magnified by the presence of his daughter in the car.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Government's motion for revocation of the Magistrate Judge's Order is hereby **GRANTED** and the Defendant is placed in pretrial detention pending trial or other disposition of this matter.

**Signed: June 8, 2005**

Lacy H. Thornburg
United States District Judge