**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO.  5:09cv006
[Criminal Case No. 5:05cr207-1]**

| | | |
|---|---|---|
| **MAURICE E. BETHEA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | <u>**MEMORANDUM OF**</u> |
| | ) | <u>**DECISION AND ORDER**</u> |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1];
Respondent's Motion for Summary Judgment [Doc. 10]; and Petitioner's
Response to Respondent's Motion for Summary Judgment [Doc. 16].

## PROCEDURAL HISTORY

On December 16, 2005, Petitioner Maurice E. Bethea was charged,
along with four co-defendants, in a third superseding Bill of Indictment.
[Criminal Case No. 5:05cr207, Doc. 75].  Specifically, Petitioner was charged
in Counts One through Thirty-Six and Thirty-Eight through Forty-Seven with
conspiracy to commit mail, wire, and securities fraud in violation of 18 U.S.C.
§ 371; conspiracy to distribute cocaine and cocaine base in violation of 21

U.S.C. §§ 841(a)(1) and 846; using and carrying a firearm in connection with a drug trafficking offense in violation of 18 U.S.C. § 924(c); securities fraud in violation of 15 U.S.C. §§ 77j(b) and 78ff; wire fraud in violation of 18 U.S.C. § 1343; mail fraud in violation of 18 U.S.C. § 1341; making false statements to a financial institution in connection with a loan in violation of 18 U.S.C. § 1014; conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1957; conspiracy to obstruct justice in violation of 18 U.S.C. § 371; obstruction of justice in violation of 18 U.S.C. § 1519; and conspiracy to pass counterfeit checks in violation of 18 U.S.C. §§ 371 and 513(a).  [Id.].

On or about January 19, 2006, Petitioner entered into a Plea Agreement in which he agreed to plead guilty to conspiracy to commit mail, wire, and securities fraud; securities fraud; making false statements to financial institution in connection with a loan; and money laundering, as charged in Counts One, Four, Thirty-Four, and Forty-One of the Indictment, respectively. [Id., Doc. 87].   The Plea Agreement also provided that the "applicable sentencing guideline level will be determined by the Court. The parties remain free to argue for any applicable sentencing enhancements or reductions." [Id.]. Additionally, in exchange for "the concessions made by the United States," the

Plea Agreement contained an explicit waiver of Petitioner's right to appeal and any right to pursue a collateral challenge to his conviction or sentence, except for:

> (1) claims of ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) the sentence, but only to the extent defendant contests the sentence [on the basis] that one or more findings on guideline issues were inconsistent with the explicit stipulations contained in any paragraph in the plea agreement filed herein, or on the basis of an unanticipated issue that arises during the sentencing hearing and which the District Judge finds and certifies to be of such an unusual nature as to require review by the Fourth Circuit Court of Appeals.

[Id. at 4-5].

On January 26, 2006, Magistrate Judge Carl Horn, III, conducted Petitioner's Rule 11 colloquy. [Doc. 9-3]. During the colloquy, Judge Horn recited the elements and the minimum and maximum penalties applicable to each charge and offense to which Petitioner was pleading guilty. Petitioner testified that he understood each charge against him and the penalties. Petitioner further acknowledged that he understood that the applicable guideline range of imprisonment would not be calculated until after the Probation Office had completed the Presentence Report (PSR) and that he

would be bound by his plea, even though he could receive a sentence that was lower or higher than the Sentencing Guidelines range. [Id. at 17].

Petitioner acknowledged that he was in fact guilty of the charges to which he was pleading guilty. [Id. at 20]. The Government summarized the terms of Petitioner's written Plea Agreement, specifically noting that the Plea Agreement contained an explicit waiver of Petitioner's right to appeal his conviction or sentence. [Id. at 21-22]. Petitioner testified that he understood the terms of the Plea Agreement. [Id. at 22]. Judge Horn then questioned Petitioner as to the waiver of his right to appeal. Petitioner again affirmed that he understood that his "right to appeal [his] conviction or sentence" was expressly waived by his Plea Agreement. [Id. at 28]. After asking Petitioner a final series of questions concerning his understanding of the proceedings, Judge Horn found Petitioner's plea to be knowingly and voluntarily made, and he accepted Petitioner's plea of guilty. [Id. at 33].

On or about August 28, 2006, the Probation Office completed the PSR. [Criminal Case No. 5:05cr207, Doc. 152]. A revised PSR was completed on October 23, 2006. [Id.]. The PSR's calculation began with a base offense level of 7, based on Petitioner's commission of a fraud offense with a maximum sentence of at least 20 years' imprisonment. [Id. ¶ 57]. The PSR

then added eighteen (18) levels because the loss amount exceeded $2.5 million, four (4) levels because there were more than 50 victims, two (2) levels for the use of sophisticated means to commit the offenses, and two (2) levels for gross receipts in excess of $1 million from one or more financial institutions. [Id. ¶¶ 58-61]. The resulting offense level was a 33, which served as the base offense level for the money laundering charges. To this base offense level the PSR added two (2) levels for Petitioner's promotional money laundering, two (2) levels for sophisticated money laundering, four (4) levels for being a leader or manager of the criminal activity, and two (2) levels for obstruction of justice. [Id. ¶¶ 62-73]. The result was an adjusted offense level of 43. Finally, the PSR reduced Petitioner's offense level by two (2) levels for acceptance of responsibility. [Id. ¶ 75]. This yielded a Total Offense Level of 41 which, when combined with a criminal history category of II, produced a range of 360 months to life imprisonment.

Petitioner filed objections to the PSR on October 6, 2006. Primarily, Petitioner objected to the recommended offense level enhancements. [See Doc. 9-4]. The Government filed a sentencing brief in response, attaching an affidavit from FBI Special Agent Douglas P. Curran. [Doc. 9-5]. The affidavit addressed certain factual objections to the PSR raised by Petitioner.

On June 25, 2007, the Honorable Lacy H. Thornburg, United States District Judge, conducted Petitioner's sentencing hearing.[1] [Doc. 9-6]. At the beginning of the hearing, the Court confirmed the acceptance of Petitioner's guilty plea. The Court then heard arguments regarding Petitioner's objections to the PSR. After ruling on, and in some instances sustaining, Petitioner's objections, the Court heard from both counsel and Petitioner. The Court then calculated Petitioner's adjusted offense level as 37. With a two-level reduction for acceptance of responsibility, the resulting offense level was 35. [Doc. 9-6 at 35-36]. When combined with a criminal history category of II, the range of imprisonment was 188 to 235 months. [Doc. 9-6 at 36]. The Court then sentenced Petitioner to 216 months' imprisonment. [Doc. 9-6 at 41]. The Court entered Judgment on July 3, 2007. [Criminal Case No. 5:05cr207, Doc. 137]. Petitioner filed a notice of appeal the same day.

On appeal, Petitioner argued that the Court violated Federal Rule of Criminal Procedure 32(i)(3)(B)[2] at sentencing by failing to make express

---

[1] Judge Thornburg has since retired, and this matter has been reassigned to the undersigned.

[2] Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure provides that a sentencing court "must -- for any disputed portion of the presentence report or other controverted matter -- rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."

rulings on Petitioner's objections regarding (1) whether Petitioner had a leadership role, (2) whether there was a vulnerable victim, (3) whether the offense was committed by sophisticated means, (4) whether the offense was committed by sophisticated money laundering, and (5) whether the PSR properly calculated Petitioner's criminal history. [Doc. 9-7]. Petitioner was represented on appeal by Lyle J. Yurko.

On December 18, 2007, the Government filed a motion to dismiss Petitioner's appeal on the basis that Petitioner had knowingly and voluntarily waived his right to appeal his conviction and sentence in his Plea Agreement. [Doc. 9-8]. On January 2, 2008, Petitioner filed a response to the Government's motion to dismiss in which he argued that the "appellate waiver should not bar appellate review of this illegal sentence entered in violation of the Federal Rules." [Doc. 9-9]. By Order dated January 17, 2008, the Fourth Circuit Court of Appeals granted the Government's motion to dismiss the appeal. [Criminal Case No. 5:05cr207, Doc. 155].

Petitioner filed his pending motion to vacate his sentence under 28 U.S.C. § 2255 on January 14, 2009. [Doc. 1]. On April 24, 2009, Respondent filed its Response. [Doc. 9]. The Response is accompanied by affidavits from trial counsel W. Terry Sherrill and appellate counsel Lyle Yurko.

[Doc. 9-10, 9-11].   Also on April 24, 2009, Respondent filed a Motion for Summary Judgment, incorporating by reference its Response to Petitioner's Motion to Vacate.  [Doc. 10].

On May 12, 2009, the Court entered an Order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his obligation to file a response to the Motion for Summary Judgment, and explaining the requirement that he present his own evidence by affidavit or unsworn declarations.  [Doc. 12].   On July 10, 2009, Petitioner filed a Response to Respondent's Motion for Summary Judgment.  [Doc. 16].

In his Motion to Vacate and the supporting memorandum, Petitioner identifies and argues several grounds for relief.  First, Petitioner contends that trial counsel was ineffective for failing to advise Petitioner that the defense's evidence may have to be summarized in a sentencing memorandum, and that the Federal Rules of Evidence would not apply during the sentencing hearing. Second, Petitioner contends that (1) trial counsel was constitutionally ineffective in failing to bring several written objections to the sentencing court's attention and failing to argue them at the hearing; (2) trial counsel failed to submit certain documents to the sentencing court; (3) and trial counsel failed to explain that, by waiving the right to appeal his sentence,

Petitioner was waiving the right to appeal a Rule 32(i)(3)(B) error. In so arguing, Petitioner also contends that the Court issued a sentence greater than necessary, thus creating an unwarranted sentencing disparity. Petitioner also asserts that the sentencing court erroneously failed to apply a "reasonable doubt" standard to its factual determinations. Third, Petitioner contends that (1) appellate counsel failed to argue on direct appeal that trial counsel provided ineffective assistance of counsel; (2) appellate counsel failed to file a response to the government's motion to dismiss the appeal; and (3) appellate counsel failed to timely inform Petitioner about his right to file a petition for a writ of certiorari.

## STANDARD OF REVIEW

At the time that the Respondent's Motion for Summary Judgment was filed, Rule 56(c) of the Federal Rules of Civil Procedure provided[3] that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2009). The Rule further provided, in pertinent part, as follows:

---

[3] Rule 56 has since been amended, but the amendment is not germane to the application of the Rule to this case.

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2) (2009).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks and citations omitted).

# DISCUSSION

## I.    Petitioner's First Claim for Ineffective Assistance of Trial Counsel

In support of his first ground for relief, Petitioner contends that trial counsel failed to explain properly the Court's procedures for the presentation of evidence during a sentencing hearing.  Specifically, Petitioner claims that trial counsel was ineffective because he failed to advise Petitioner (1) that defense evidence may have to be summarized in a sentencing memorandum, and (2) that the Federal Rules of Evidence would not apply during the sentencing hearing.  More specifically, Petitioner contends that he had gathered "roughly 300 pages in 17 folders" that he was not allowed to introduce to the Court for sentencing.  [Doc. 3 at 7-8].  Petitioner further contends that

> counsel never timely informed Petitioner that he had no right to subpoena power at his sentencing hearing, to insure his witness testimony like he would be going to trial.  Furthermore, Counsel led Petitioner to believe he would be able to cross-examine government witnesses, while failing to explain that the government could use hearsay statements against him at the sentencing without having to produce the source, a practice that was prevalent.

[Id. at 21].  Finally, Petitioner contends that he would have proceeded to trial if "properly" advised.

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697, 104 S.Ct. 2052). In considering the prejudice prong of the analysis, the Court must not grant relief solely because

Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

Counsel is presumed to be competent, and a petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption. Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id. A petitioner bears an even heavier burden where the claim of ineffective assistance of counsel follows the entry of a guilty plea. Where a defendant has pled guilty, he must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Additionally, because several of Petitioner's allegations challenge counsel's conduct at sentencing, in order to demonstrate an entitlement to relief on those matters, Petitioner must, at a minimum, allege facts which establish that

his "sentence would have been more lenient" absent counsel's errors.  See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

Here, Petitioner has failed to present any evidence to support his conclusory allegation that he would have proceeded to trial if his trial counsel had advised him that his argument and evidence would have to be summarized for presentation at the sentencing hearing and that the Federal Rules of Evidence would not apply.  Furthermore, Petitioner does not contend that trial counsel failed to file a sentencing memorandum on his behalf; indeed, the record reflects that counsel filed a lengthy Sentencing Memorandum on May 3, 2007.  [Criminal Case No. 5:05cr207, Doc. 132]. Significantly, Petitioner does not identify any evidence or relevant information that counsel failed to incorporate into such memorandum.   Accordingly, Petitioner cannot show that trial counsel was ineffective for failing to explain that the evidence may have to be summarized for presentation to the sentencing court.

Furthermore, as for Petitioner's contentions regarding counsel's alleged failure to tell Petitioner that the Federal Rules of Evidence would not apply at Petitioner's sentencing hearing, counsel's alleged failure to advise Petitioner that hearsay was permissible during a sentencing hearing, and his alleged

failure to advise Petitioner that cross-examinations would be limited, such alleged failures do not constitute ineffective assistance of counsel. <u>Strickland</u> and its progeny do not require counsel to educate a defendant on the rules of evidence prior to a sentencing hearing. Moreover, Petitioner's claim that he would have gone to trial if so advised is conclusory. Petitioner has not identified any statements which he believed should have been excluded from the sentencing hearing, or how the hearing would have been different if the hearsay rules had been applied. In sum, Petitioner's bare and conclusory allegations are insufficient to show that trial counsel was ineffective and, in any event, Petitioner has wholly failed to show prejudice under <u>Strickland</u> and its progeny.

## II. Petitioner's Second Claim for Ineffective Assistance of Trial Counsel

Petitioner appears to raise the following claims in his second ground for relief: (1) trial counsel was constitutionally ineffective in failing to bring several written objections to the Court's attention at the sentencing hearing; (2) trial counsel failed to submit certain documents to the Court; (3) trial counsel failed to explain that, by waiving the right to appeal his sentence, Petitioner was waiving the right to appeal an alleged Rule 32(i)(3)(B) error; and (4) the Court issued a sentence greater than necessary, thus creating an unwarranted

sentencing disparity, and erroneously failed to apply a "reasonable doubt" standard to its factual determinations. The Court will address each argument in turn.

**A.** **Petitioner's Contention that Trial Counsel Was Ineffective for Failing to Raise Written Objections to the Sentencing Court.**

Petitioner first contends that trial counsel was ineffective for failing to argue certain written objections at the sentencing hearing. The Court finds that Petitioner's contention is without merit, as a review of the record demonstrates that trial counsel's representation was imminently reasonable. In advance of the sentencing hearing, trial counsel filed approximately thirty objections to the presentence report. [Doc. 9-4, Doc. 9-6 at 7]. Furthermore, during the sentencing hearing, trial counsel presented and zealously argued for numerous reductions to the PSR's initial guideline calculations. As a result of trial counsel's advocacy, Petitioner's Total Offense Level was lowered from 41 to 35. [Doc. 9-6 at 35-36]. Petitioner has simply failed to show that trial counsel was ineffective with regard to Petitioner's sentencing.

Even if Petitioner had shown that trial counsel was ineffective, Petitioner has not shown that he was prejudiced in any way by counsel's performance. That is, Petitioner has failed to allege and has failed to present evidence of facts sufficient to prove that, even if trial counsel had re-argued the written

objections at the sentencing hearing, the Court would have sustained such objections and that Petitioner would have received a lesser sentence as a result. As such, Petitioner's allegation of prejudice is purely conjectural.

**B. Petitioner's Contention that Trial Counsel Was Ineffective in Failing to Submit Various Documents to the Sentencing Court.**

Petitioner next contends that trial counsel was ineffective in failing to submit certain documents to the Court for sentencing. Petitioner, however, is unable to show that trial counsel's decision was either ineffective or prejudicial. Petitioner contends that he wanted to submit into evidence 300 documents in 17 file folders, including "several hundred documents in the form of checks, wires, letters, contracts, and statements." [Doc. 3 at 11]. Trial counsel was not, however, required to present each and every piece of evidence that Petitioner wanted him to submit. Counsel provided a summary of the relevant evidence in his Sentencing Memorandum. [See Criminal Case No. 5:05cr207, Doc. 132] Petitioner does not contend that counsel failed to do this. Indeed, in an email to his counsel after the sentencing hearing, Petitioner expressed his opinion that counsel's presentation of the evidence at sentencing was "excellent." [Doc. 3-1 at 23]. In addition to the documents summarized in the sentencing memorandum, trial counsel also presented

numerous documents to the court at the beginning of the sentencing hearing. At that time, counsel stated, "As I made the Court aware in one of the motions I filed to continue sentencing, there were numerous exhibits that my client had indicated that he wanted included or wanted the Court to consider during sentencing. . . . I'm just going to refer to some of these during my argument during sentencing and you'll have a copy for the Court."  [Doc. 9-6 at 4].

Here, Petitioner has not even attempted to identify the documents he claims counsel failed to submit.  In any event, trial counsel was not ineffective merely because he refused to present to the Court every document that Petitioner wanted him to.  The attorney, not the client, determines what evidence is relevant and what should be brought to the attention of the Court. As the Supreme Court observed in Strickland, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Strickland, 466 U.S. at 688, 104 S.Ct. 2052.  Petitioner has presented no evidence and no argument that would begin to overcome this presumption on this point.

Petitioner also claims that trial counsel "failed to adequately involve himself after the plea agreement signing, and was literally pushed into last minute interjections to the court where the arguments submitted were provided by Petitioner, that had been dictated over the phone to his sister Gina, to be e-mailed to his counsel, since he would not respond to phone calls (even from the family) or to letters." [Doc. 3 at 10]. First, trial counsel's lengthy sentencing memorandum utterly contradicts Petitioner's claim that trial counsel was not involved after Petitioner's plea. Second, trial counsel visited with Petitioner in jail at least four times during the month before the sentencing hearing. Thus, contrary to Petitioner's assertion, counsel was actively representing Petitioner after entry of the plea agreement.

In sum, Petitioner has simply failed to show that trial counsel was ineffective in failing to submit certain documents to the Court.

**C.    Petitioner's Contention that Trial Counsel Never Advised Him that He Was Waiving His Right to Appeal His Sentence**.

Petitioner next claims that he never anticipated or understood that "he could be sentenced in error due to oversight by counsel and the court and legitimately waive that right to be corrected on appeal." [Doc. 1 at 5]. Petitioner further states that "[h]e would not have entered into the plea agreement and would have gone to trial, if this potential was explained to

him."  [Id.].  By his own statements in his brief in support of the motion to vacate, however, Petitioner admits that his trial counsel *did* advise him that pleading guilty would result in a waiver of his right to appeal his sentence. Petitioner states that "Counselor Sherrill assured Petitioner that he did not waive his right to direct appeal nor collateral attack, so long as his claims centered on ineffective assistance of counsel, prosecutorial misconduct, or the Court taking a position that an issue deserved to be settled at the appellate level concerning sentencing."  [Id. Doc. 3 at 9].  As Respondent notes, an argument that the sentencing court violated Rule 32(i)(3)(B) by failing to rule expressly on objections is not a claim of ineffective assistance of counsel, prosecutorial misconduct, or an issue determined by the district court to be settled on appeal.  Thus, by Petitioner's own statements, trial counsel correctly advised Petitioner of the scope of his waiver of appellate rights.

Furthermore, the scope of the appellate waiver was discussed and explained extensively during the Rule 11 hearing.  The Government explained the appellate waiver to Petitioner in open court as follows:

> Mr. Bethea has . . . obviously waived a number of rights by pleading guilty, including most importantly, for purposes of this hearing, the right to appeal or seek postconviction relief with regard to his guilty plea or sentence, except in pretty limited circumstances, namely, raising claims of ineffective assistance of

counsel, prosecutorial misconduct or challenges to the sentence to the extent it deviates from the stipulations in the Plea Agreement, which in this case there are none with regard to sentence.

[Doc. 9-3 at 22]. When Judge Horn asked Petitioner whether he "understood that with some very narrow exceptions, as stated by Mr. Martens, that you are waiving your right to appeal your conviction or your sentence, or to contest either your conviction or sentence in any other postconviction proceeding," Petitioner testified that he understood the waiver of his appellate rights as contained in his Plea Agreement. [Id. at 28]. In fact, Petitioner states in his memorandum in support of the motion to vacate that these claims "[were] obviously waived by the plea agreement." [Doc. 3 at 38].

"A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal citation, quotation, and alterations omitted). "Indeed, because they do carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings." Id. (internal quotations omitted). Thus, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements

made during a properly conducted Rule 11 colloquy are always 'palpably incredible,' and 'patently frivolous or false.'"  Id. (internal quotations and citations omitted).

Here, Petitioner has not made a showing of "extraordinary circumstances," and a review of Petitioner's Rule 11 colloquy and plea agreement demonstrate that Petitioner's plea was both knowing and voluntary.  Petitioner specifically acknowledged at the plea hearing that he was waiving many of his appeal rights, including the right to challenge his sentence.  In sum, Petitioner has failed to show that trial counsel was ineffective for failing to advise him that he was waiving his right to appeal his sentence.

> **D.  Petitioner's Claims of a "Parsimony Provision" Violation, an Unwarranted Sentencing Disparity, and the District Court's Use of a Standard Less Than "Reasonable Doubt" During Petitioner's Sentencing.**

In claiming that the "parsimony provision"[4] was overlooked, Petitioner claims his sentence was greater than necessary, in part because his sentence improperly constituted an unwarranted sentencing disparity.  Petitioner also claims that the Court should have determined the relevant facts regarding his

---

[4]Petitioner is referring to the so-called parsimony provision of 18 U.S.C. § 3553(a), which requires that judges "impose a sentence sufficient, but not greater than necessary" to serve the purposes of sentencing.

sentencing by the "reasonable doubt" standard.  For the following reasons, both contentions are without merit.

The Court first notes that under his Plea Agreement Petitioner waived, *inter alia*, his right to collaterally challenge his sentence on any grounds, except ineffective assistance of counsel and/or prosecutorial misconduct, or a sentencing issue certified by the Court.  During his plea hearing, Petitioner swore under oath that he understood this waiver provision, and the Magistrate Judge found his plea and waivers to be knowing and voluntary.  Therefore, the waiver is valid and enforceable against Petitioner.  Petitioner's substantive challenge to his sentence does not fall within the scope of the exceptions to the waiver provision; consequently, such waiver stands as an absolute bar to his attempt to challenge his sentence on the basis alleged.

To the extent Petitioner's claim is not barred by waiver, it is defaulted due to his failure to raise it on direct appeal.  Generally, claims that could have been but were not raised on direct review are procedurally barred.  "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal."  Bousley v. United States, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citation and internal quotation marks omitted).  To collaterally attack a conviction or sentence based on errors that could have

been but were not raised on direct appeal, a petitioner must show both cause to excuse his default and actual prejudice resulting from the errors of which he is complaining, or he must show that a "miscarriage of justice" would result from the court's refusal to consider his claim. United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. at 167-68, 102 S.Ct. 1584).

Here, Petitioner has not alleged any matter that could arguably demonstrate cause and prejudice or a miscarriage of justice in order to excuse his procedural default of the claim challenging his sentence. Consequently, Petitioner's sentencing challenge must be dismissed as it is barred by waiver and is procedurally defaulted without excuse.

To the extent Petitioner is arguing that trial counsel was ineffective for failing to argue the "parsimony provision" or the unwarranted disparity issue at sentencing, this claim is also without merit. During the sentencing hearing, trial counsel argued that Petitioner's "harsh treatment" was unwarranted because "[t]he other defendants, the closest one to him in this case got 30 months and they are talking about 30 years to life. That does not justify ... them seeking that type of harsh treatment ...." [Doc. 9-6 at 14-15]. Therefore, contrary to Petitioner's contention, his trial counsel *did* argue that Petitioner's

sentence was much longer than the sentences his co-defendants had received. Furthermore, Petitioner admits in his brief in support of his motion to vacate that trial counsel raised the parsimony argument to the Court: "Counsel, at sentencing argued [about the sentences that various, high-profile white collar criminals had received] as evidence to employ the Parsimony Provision." [Doc. 3 at 13]. Indeed, although Petitioner stated that he believed that a sentence of 180 to 235 months was not fair or reasonable, he expressly admitted that he deserved a lengthier sentence that his co-defendants: "I'm just as guilty as everyone involved. More guilty than anyone involved in my case .... So I definitely deserve a sentence more than anyone in my case got." [Doc. 9-6 at 40-41].

Finally, to the extent Petitioner is arguing that trial counsel was ineffective for failing to argue that the Court's "preponderance of the evidence" standard with regard to its factual findings was impermissibly low, this claim is also without merit.[5] Petitioner presents absolutely no legal authority to support his claim that the sentencing court should have applied the "reasonable doubt standard." As such, trial counsel's failure to raise and argue that claim cannot be constitutionally ineffective.

---

[5]As Respondent notes, counsel actually did ask the Court to make its factual findings by the heightened clear and convincing standard. [Doc. 9-6 at 15].

### III.____Petitioner's Claim for Ineffective Assistance of Appellate Counsel

Petitioner next contends that appellate counsel was ineffective in three ways: (1) appellate counsel failed to argue on direct appeal that trial counsel provided ineffective assistance of counsel; (2) appellate counsel failed to file a response to the Government's motion to dismiss the appeal; and (3) appellate counsel failed to timely inform Petitioner that his appeal had been dismissed and that Petitioner had the right to file a petition for a writ of certiorari.

### A.       Appellate Counsel's Failure To Argue Ineffective Assistance of Counsel on Direct Appeal.

Petitioner contends that appellate counsel Lyle Yurko's performance fell below an objective standard of reasonableness because he failed to argue on direct appeal that trial counsel provided ineffective assistance of counsel.  For the following reasons, this contention is without merit.

Appellate counsel provided a sworn affidavit in which he states that he and Petitioner jointly decided to argue the perceived sentencing errors on direct appeal and that they jointly decided to reserve the ineffective assistance of counsel claim for a collateral attack.  [Doc. 9-11 at ¶ 3].  To the extent that appellate counsel could have successfully raised an ineffective assistance of counsel claim on direct appeal, his decision to reserve this issue for collateral

review was not unreasonable. In any event, even if appellate counsel had unilaterally decided to omit an ineffective assistance of counsel claim, the failure to raise this claim on direct appeal was not ineffective assistance of counsel. As the Court has already found, trial counsel did not render ineffective assistance. In sum, this contention is without merit.

**B.    Petitioner's Contention that Appellate Counsel Failed to File a Response to the Government's Motion to Dismiss the Appeal.**

Petitioner claims in several parts of his brief in support of his motion to vacate that appellate counsel failed to file a response to the Government's motion to dismiss Petitioner's appeal. Petitioner is simply incorrect. On January 2, 2008, appellate counsel did file a Response to Motion to Dismiss on behalf of Petitioner with the Fourth Circuit. [Doc. 9-9]. In the Response to Motion to Dismiss, counsel cites case law and argues that Petitioner's appellate waiver should be set aside to allow the consideration of the alleged Rule 32(i)(3)(B) sentencing errors. Accordingly, Petitioner's claim that appellate counsel was ineffective for failing to file a response to the Government's motion to dismiss is utterly belied by the record.

**C.    Petitioner's Contention that Appellate Counsel Failed to Advise Petitioner that His Appeal Had Been Dismissed and that Petitioner Had the Right to File A Petition for Writ of Certiorari.**

Petitioner next contends that appellate counsel was too "concerned with personal affairs of being a newly wed and traveling to Vietnam" [Doc. 3 at 37] to inform Petitioner that his appeal had been dismissed and that he had ninety days in which to file a petition for a writ of certiorari.[6]  In his sworn affidavit, appellate counsel attests to the following:

> When the appeal was dismissed by the Fourth Circuit, I promptly notified Mr. Bethea of the adverse result by telephone well before the 90 day deadline for filing a cert petition with the United States Supreme Court. Mr. Bethea's arguments about my travel to Vietnam are fallacious.    None of my travels to Vietnam [a]ffected my preparation and responses to [his] matter whatsoever.    When the adverse result occurred, Mr. Bethea repeatedly called the office requesting copies of the relevant materials and my staff promptly responded to Mr. Bethea's request. Mr. Bethea then reported that the Bureau of Prisons had failed to deliver these materials to him so my staff again sent copies of the material to him through his family.

---

[6]Petitioner also appears to argue that appellate counsel was ineffective for failing to raise the alleged Rule 32(i)(3)(B) errors to the District Court.  Any failure by appellate counsel to raise a Rule 32 error with the District Court would not be ineffective assistance of counsel because the District Court was without jurisdiction to entertain such a motion while the case was pending before the Court of Appeals.

[Doc. 9-11 at ¶¶ 5-6]. This affidavit by counsel demonstrates that he and his staff timely notified Petitioner, supplied him with the relevant documents, and were attentive to his needs.

Furthermore, although appellate counsel does not state in his affidavit that he informed Petitioner of his right to file a petition for a writ of certiorari, this is insufficient to advance Petitioner's claim. Even if appellate counsel had failed to inform Petitioner of such right, Petitioner has simply not shown that he was prejudiced by this failure. Petitioner does not even allege or argue any prejudice. The simple fact is that Petitioner is unable to show prejudice because he had no claims with merit to raise in such a petition.

Furthermore, unlike the mandatory jurisdiction of the courts of appeals in a direct criminal appeal, "[r]eview on a writ of certiorari is not a matter of right, but of judicial discretion." Sup. Ct. R. 10. Although "indigent defendants pursuing appeals as of right have a constitutional right to a brief filed on their behalf by an attorney, that right does not extend to forums for discretionary review." Austin v. United States, 513 U.S. 5, 8, 115 S.Ct. 380, 130 L.E.2d 219 (1994) (citation omitted); see also Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.E.2d 640 (1991) (affirming that where there is no constitutional right to counsel there can be no deprivation of effective

assistance); <u>Wainwright v. Torna</u>, 455 U.S. 586, 587-88, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (same); <u>see also</u> <u>United States v. Eisenhardt</u>, 10 F. Supp. 2d 521, 523 (D. Md. 1998) (no prejudice found where counsel did not inform the defendant of the right to file a petition for writ of certiorari); <u>Linton v. United States</u>, Civil Action No. 1:04cv57, 2007 WL 984053, at *10 (N.D. W. Va. Mar. 26, 2007) (no prejudice where counsel did not file a petition for writ of certiorari).

In sum, for the reasons stated herein, the Court concludes that Petitioner's claims in his Section 2255 motion are without merit and the Court will, therefore, grant summary judgment to Respondent.

Finally, the Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. <u>See generally</u> 28 U.S.C. § 2253(c)(2); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his Motion to Vacate states a debatable claim of the

denial of a constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). As a result, the Court declines to issue a certificate of appealability. <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED THAT:**

1.    Respondent's Motion for Summary Judgment [Doc. 10] is **GRANTED**;

2.    Petitioner's § 2255 Motion to Vacate [Doc. 1] is **DENIED** and **DISMISSED**; and

3.    The Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: March 9, 2012

Martin Reidinger
United States District Judge